SHIRLEY HOLDER

VERSUS

RACHEL HEBERT, STATE FARM
INSURANCE COMPANY AND SHELTER
MUTUAL INSURANCE COMPANY

NO. 23-CA-567

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 789-191, DIVISION "P"
HONORABLE LEE V. FAULKNER, JR., JUDGE PRESIDING

October 09, 2024

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and John J. Molaison, Jr.

**<u>AFFIRMED</u>**
    **SMC**
    **MEJ**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
SHIRLEY HOLDER
    David S. Moyer

COUNSEL FOR DEFENDANT/APPELLEE,
SHELTER MUTUAL INSURANCE COMPANY
    Travis J. Beslin
    Charles V. Giordano

**CHEHARDY, C.J.**

Plaintiff, Shirley Holder, appeals the trial court's May 3, 2023 judgment, which granted summary judgment in favor of defendant, Shelter Mutual Insurance Company ("Shelter"), and dismissed plaintiff's claims for underinsured/underinsured ("UM/UIM") coverage under Shelter's policy with prejudice. For the following reasons, we affirm the trial court's judgment.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of a motor vehicle accident that occurred on or about November 6, 2017. On that date, defendant, Rachel Hebert, allegedly ran a red light—a fact that Ms. Hebert refutes—and collided with plaintiff, Shirley Holder, who was purportedly lawfully proceeding through the intersection. The vehicle defendant was driving was owned by Michelle Vavasseur and insured by State Farm Mutual Automobile Insurance Company ("State Farm"). At the time of the accident, defendant was purportedly operating a vehicle while in the course and scope of her employment with NOLA Media Group. Defendant was returning to her office following a work meeting. Defendant's employer paid for her mileage to attend work meetings.

Plaintiff contends that, as a result of the accident, she sustained an exacerbation of her pre-existing cervical and lumbar issues, and is no longer able to take care of herself; she "has become entirely dependent upon the care of others." Plaintiff settled her claims against defendants, Ms. Vavasseur, and State Farm for $100,000.00. She contends that the State Farm settlement is insufficient and "not a fair and reasonable compensation for the damages" she has suffered, given that she has "lost significant quality of life as a direct cause of the accident."

Shelter is the UM/UIM insurer for plaintiff. Shelter propounded a request for production of documents to State Farm requesting that State Farm produce a certified copy of the State Farm policy insuring defendant for this accident, "as

well as any other polices, issued by State Farm to Rachel Hebert that were in effect on [the date of the accident]." State Farm responded that "[t]here are no additional insurance policies in possession of Defendant that would pertain to the accident sued upon." Further, defendant testified in her deposition that, while she was employed by NOLA Media Group at the time of the accident, "[t]hey are no longer in existence." Based solely upon these reasons, plaintiff contends "[t]here is no other insurance coverage available [to her] in this case[;]" thus, Shelter is responsible to her for the damages she has sustained that exceed the amount of her settlement with State Farm.

In support of her UM/UIM claim, plaintiff contends that she suffered cervical and lumbar injuries, as well as a severe cognitive decline, as result of the accident. According to the deposition testimony of her treating physician, Dr. Patrick Glynn, plaintiff's cervical and lumbar complaints following the accident were likely exacerbations of preexisting injuries with which she has been suffering for decades. Dr. Glynn confirmed his records for plaintiff indicate that she underwent several cervical and lumbar MRI's between the early 2000s and now, and each MRI showed that plaintiff suffered with progressively worsening degenerative changes prior to the November 2017 accident.[1] In particular, he confirmed that a cervical MRI performed on plaintiff approximately nine months prior to the accident revealed degenerative changes and protrusion, including a disc herniation compressing the right C-5 nerve root. According to Dr. Glynn, although he believes plaintiff exacerbated or aggravated her spinal pain as a result of the accident, there were no significant structural changes that would require surgery that was not already needed prior to the accident. Additionally, preceding the accident, Dr. Glynn ordered a cognitive workup for plaintiff because she was

---

[1] While the appellate record contains the transcript of Dr. Glynn, it is devoid of his—or any other—medical records for plaintiff.

exhibiting signs of dementia. He opined that plaintiff's current cognitive issues are likely a natural progression of dementia. The record indicates that plaintiff is no longer competent and was admitted permanently to a memory care facility.

On November 30, 2022, Shelter filed a motion for summary judgment against plaintiff, on grounds that she cannot produce factual support to create a genuine issue of material fact that she is entitled to the UM/UIM benefits of Shelter's policy. Specifically, Shelter alleged that plaintiff would not be able to carry her burden of establishing the underinsured status of the offending driver, or that she had not been sufficiently compensated for her injuries resulting from the accident.

The hearing on Shelter's motion was originally set for January 19, 2023. Plaintiff was properly served with notice of the January hearing date as her counsel acknowledged receipt of the notice via email to Shelter's counsel. Pursuant to La. C.C.P. art. 966(B)(2), plaintiff's opposition to Shelter's motion was due fifteen days prior to the hearing, or on January 4, 2023.[2] On January 3, 2023, plaintiff's counsel contacted counsel for Shelter requesting a continuance due to an alleged scheduling conflict.[3] Shelter's counsel did not consent to the continuance. Five days after the January 4, 2023 due date for filing her opposition memorandum had lapsed, and knowing that Shelter's counsel did not consent to a continuance, plaintiff's counsel filed an *ex parte* motion to continue the January 9, 2023 hearing on Shelter's summary judgment motion. The trial court, without holding a contradictory hearing as mandated by La. C.C.P. art. 1605,[4] granted plaintiff's

_____

[2]    La. C.C.P. art. 966(B)(2) requires that any opposition memorandum and supporting documentation *shall* be filed not less than fifteen days prior to the hearing on the motion for summary judgment.

[3]    The record shows that upon receipt of the notice, plaintiff's counsel contacted counsel for Shelter advising of a scheduling conflict with the hearing date. However, plaintiff's counsel failed to move for a continuance at that time.

[4]    La. C.C.P. art. 1605 provides that "[e]very contested motion for continuance *shall* be tried summarily and contradictorily with the opposite party." [Emphasis supplied.]

motion to continue and reset the hearing on Shelter's motion for summary judgment to March 6, 2023.

Plaintiff filed an opposition memorandum to Shelter's motion for summary judgment, with attached supporting exhibits, on February 22, 2023, twelve days prior to the March 6, 2023 hearing date.[5] In a reply memorandum, Shelter filed a motion to strike plaintiff's opposition, and any documents attached, on the basis that it was filed untimely. Relying on the Supreme Court's decisions in *Mahe v. LCMC Health Holdings,* 23-25 (La. 3/14/23), 357 So3d 322, and *Auricchio v. Harrison*, 20-1167 (La. 10/10/21), 332 So.3d 660, 662-63, Shelter argued that the new hearing date did not change the mandatory opposition filing deadline under La. C.C.P. art. 966(B)(2). On the date of the hearing, the trial court first considered Shelter's motion to strike. Agreeing with Shelter, the trial court granted its motion, thereby striking plaintiff's opposition, and any supporting evidence submitted with it, as untimely. As a result, as the hearing on Shelter's motion for summary judgment proceeded, the trial court heard the matter as if Shelter's motion was unopposed.

In its motion, Shelter argued that it was entitled to summary judgment because (1) plaintiff has already been sufficiently compensated for her loss; (2) Shelter is not obligated to pay any claims since there *could be* other insurance; and (3) the accident was not the proximate cause of plaintiff's injuries. According to Shelter, plaintiff cannot produce factual support to create a genuine issue of material fact that she is entitled to UM/UIM coverage under the Shelter policy. Specifically, Shelter, the only remaining defendant, argued that the evidence showed that plaintiff received $100,000.00 in settlement from State Farm, the

---

[5] The fifteenth day prior to the March 6, 2023 hearing on Shelter's motion for summary judgment fell on a Sunday. The clerk's office was closed on the following Monday and Tuesday for Mardi Gras. The first business day following the Mardi Gras holiday was Wednesday, February 22, 2023, which is the day plaintiff's counsel filed her opposition memorandum.

underlying insurer. Shelter claimed that in order for plaintiff to recover against it as her UM carrier, she had to prove the UM status of defendant, the offending motorist. In plaintiff's attempt to accomplish this, instead of deposing defendant or procuring an affidavit of no other insurance when she settled with State Farm, Shelter argued that plaintiff provided her own affidavit of no other insurance. Moreover, it is undisputed by plaintiff and Shelter that defendant was in the course and scope of her employment with NOLA Media Group, as she had left a work meeting and was driving back to her office at the time of the accident. According to Shelter, plaintiff failed to produce evidence that NOLA Media Group did not provide insurance for its employees. In short, Shelter argued that plaintiff failed to provide any documentation showing that defendant's employer, NOLA Media Group and/or defendant, did not have any additional insurance providing coverage for the damages allegedly suffered by plaintiff above the $100,000.00 limits paid by State Farm. Thus, according to Shelter, plaintiff has failed to establish the uninsured or underinsured status of defendant that would trigger coverage under the Shelter policy.

Shelter further argued that the $100,000.00 settlement from State Farm was sufficient to compensate plaintiff for any exacerbation of her alleged injuries. According to Shelter, at worst, plaintiff suffered an exacerbation of the pain she already experienced due to her longstanding degenerative spinal disease. Moreover, Shelter argued that none of the alleged injuries plaintiff claims she suffered in the instant accident resulted in the need for any surgical procedure; and regardless of the accident, according to plaintiff's treating physician, plaintiff's cervical and lumbar pain would have continued to progress. Based on the testimony of Dr. Glenn, Shelter argued that plaintiff's cervical complaints allegedly resulting from the accident resolved within approximately six months. As to plaintiff's claim that the accident caused her cognitive decline, Shelter

argued that according to Dr. Glenn, dementia is a progressive disease that typically worsens over time, and that plaintiff suffered from a plethora of underlying health issues prior to the accident that could lead to progressing dementia.

At the close of the hearing, the trial judge took the matter under advisement. Thereafter, on May 3, 2023, the trial court issued judgment, with written reasons, granting Shelter's motion for summary judgment and dismissing plaintiff's claims against it with prejudice. This timely appeal filed by plaintiff followed.

## ASSIGNMENT OF ERROR

On appeal, plaintiff asserts the trial court erred (1) in finding that no genuine issue of material fact existed as to whether the accident was a proximate cause of her injuries, and whether she was adequately compensated for those injures; and (2) in concluding that plaintiff cannot satisfy her burden of proof at trial that other insurance was not available. Because plaintiff's second assignment of error is dispositive of this case, we first address whether she has produced factual support sufficient to establish the existence of a genuine issue of material fact regarding an element essential to her claim; *i.e.*, that other insurance was not available.

## DISCUSSION

### *Applicable Law on Summary Judgment*

Appellate courts review the granting of a summary judgment *de novo* using the same criteria governing the trial court's consideration of whether summary judgment is appropriate. *Varrecchio v. Lemoine Company*, 23-603 (La. App. 5 Cir. 1/31/24), 381 So.3d 210, 2014. A motion for summary judgment should be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of most actions. La. C.C.P. art. 966(A)(2); *Dragna v. Terrytown*

*Café, Inc.*, 22-239 (La. App. 5 Cir. 10/5/22), 353 So.3d 203, 208, *citing Trench v. Winn-Dixie Montgomery LLC*, 14-152 (La. App. 5 Cir. 9/24/14), 150 So.3d 472, 475. However, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubts must be resolved in the opponent's favor. *Willis v. Medders*, 00-2507 (La. 12/8/00), 775 So.2d 1049, 1050 (*per curiam*).

The party moving for summary judgment bears the burden of proof. *Stogner*, *supra*, citing La. C.C.P. art. 966(D)(1). However, if the mover will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claims. *Id*. Thereafter, the burden shifts to the adverse party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. *Id*. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. *Id*. Once the motion for summary judgment has been properly supported by the moving party, the failure of the adverse party to produce evidence of a material factual dispute mandates the granting of the motion. *Id.*, citing *Babin v. Winn Dixie La., Inc.*, 00-78 (La. 6/30/00), 764 So.2d 37, 40. The decision as to the propriety to grant a motion for summary judgment must be made with reference to the substantive law applicable to the case. *Vincent v. Nat'l Gen. Ins. Co.*, 21-227 (La. App. 5 Cir. 10/13/21), 330 So.3d 378, 381.

In our *de novo* review of the instant case, we must determine whether any admissible evidence created a genuine issue of material fact precluding summary judgment in favor of Shelter. The trial court is given vast discretion in its evidentiary rulings, and its decision to admit or exclude evidence will not be reversed on appeal in the absence of an abuse of that discretion. *Larios v. Martinez*, 17-514 (La. App. 5 Cir. 2/21/18), 239 So.3d 1041, 1045. Here, the trial

court properly excluded the exhibits attached to plaintiff's opposition memorandum on the basis that her opposition was untimely filed. Therefore, State Farm's response to the request for production of documents propounded by Shelter, the State Farm automobile liability policy insuring Ms. Vavasseur (the owner of the vehicle driven by defendant), and the excerpts from defendant's deposition, all of which were attached to plaintiff's opposition memorandum, cannot be considered by this Court on appeal in determining whether the trial court erred in granting Shelter's motion for summary judgment.

### *UM/UIM Coverage*

For purposes of UM/UIM coverage, an underinsured motorist is one whose "automobile liability insurance on [a motor vehicle] is less than the amount of damages suffered by an insured [of the UM/UIM insurer] and/or the passengers in the insured's vehicle at the time of an accident, as agreed to by the parties and their insurers or as determined by final adjudication." La. R.S. 22:1295(2)(b). In order for an insured to recover against his UM/UIM insurer, he must first prove the underinsured status of the offending motorist. *Lozano v. Brown*, 10-489 (La. App. 5 Cir. 1/25/11), 60 So.3d 669, 671. In other words, the burden of proving uninsured/underinsured status of the offending motorist rests with the plaintiff. *Finley v. "ABC" Ins. Co.*, 06-581 (La. App. 5 Cir. 12/27/06), 946 So.2d 330, 334; *Jones v. Bickham*, 93-836 (La. App. 5 Cir. 2/23/94), 633 So.2d 778. Louisiana Revised Statute 22:1295(6)[6] provides three methods for establishing a *prima facie* case that the owner or operator of the offending vehicle was either uninsured or underinsured: (1) an affidavit from the owner and operator of the alleged uninsured vehicle stating that he did not have automobile liability insurance at the time of the accident; (2) an affidavit from the Department of Publish Safety and Corrections regarding inquiry into the insurance of the owner and operator; or (3) admissible

---

[6] Formerly La. R.S. 22:680(6).

evidence showing the owner and operator of the alleged uninsured vehicle was a nonresident or not a citizen of Louisiana on the date of the accident. *Lozano*, 60 So.3d at 671. The effect of the *prima facie* evidence is to shift the burden of proof from the party alleging the underinsured status of the vehicle in question to their UIM insurer. La. R.S. 22:1295(6)(d). If the plaintiff fails to follow these procedures, the burden remains with him to prove such facts by any other admissible evidence. *Finley*, 946 So.2d at. 330.

Pursuant to La. R.S. 22:1295(6)(c), plaintiff can satisfy her burden by introducing the testimony or written statement of defendant, the offending driver, admitting that she had no automobile liability insurance, and/or a statement from her former employer, NOLA Media Group, that it had no insurance in effect on the date of the accident providing coverage for the alleged liability of defendant, its employee. *Dean v. State Farm Mutual Automobile Insurance Company*, 51,243 (La. App. 2 Cir. 4/5/17), 217 So.3d 611, 616. Although there was allegedly a statement made by defendant in her deposition that her employer is currently defunct, this statement is not proof that NOLA Media Group did not have a liability policy that would have provided coverage for defendant, who was in the course and scope of her employment at the time of the accident. Additionally, the record contains no evidence regarding any personal automobile liability insurance information relative to defendant or a statement from her that that there was no other coverage available. In short, the record is devoid of any evidence regarding the insurance status of defendant, the offending driver.

Louisiana Revised Statute 22:1295(6)(d) permits the introduction of "any admissible evidence" to prove UM status. *Dean*, 217 So.3d at 616. Ordinarily, the plaintiff can satisfy his burden by introducing the declarations page of the offending driver's liability policy, showing the policy limits, and any evidence showing the plaintiff's damages exceeded that amount. *Id.* Here, while the record

contains a copy of the Receipt and Release Agreement evidencing a settlement between plaintiff, defendant, Ms. Vavasseur, and State Farm for $100,000.00, this document does not evidence the underinsured status of defendant or that State Farm's limits of liability for this accident have been exhausted.[7]  Moreover, proof of a settlement with the offending driver's liability carrier does not constitute proof that the offending driver's coverage has been exhausted or that the driver is an underinsured motorist (UIM).  *Id.*

Finally, plaintiff can satisfy her burden under La. R.S. 22:1295(6)(c) by showing that her own UM carrier has judicially confessed liability.  *See Dean*, 217 So.3d at 617; *Finley*, 946 So.2d at 334.  We found no evidence in the record showing that Shelter ever judicially confessed UM/UIM coverage for this accident in favor of plaintiff.

Because Shelter would not bear the burden of proof at trial on the issue of UM/UIM coverage, on the motion for summary judgment, Shelter was not required to negate all essential elements of plaintiff's claim, but rather Shelter had to point out to the trial court the absence of factual support for even one element essential to plaintiff's claim for UM/UIM coverage.  *See* La. C.C.P. art. 966(D)(1).  Proof of the offending driver's underinsured status is an essential element to be proved in plaintiff's claim against Shelter.  The record contains no admissible evidence showing that plaintiff would be able to satisfy her burden of proving defendant's alleged underinsured status at a trial on the merits.  Absent any proof in the record that the offending driver was underinsured at the time of the accident, there is no support for the imposition of liability against Shelter as plaintiff's UIM carrier.

---

[7]      Although plaintiff attached as exhibits to her opposition memorandum, State Farm's response to a request for production of documents propounded by Shelter stating that it had no further insurance covering this accident, as well as the declarations page of the State Farm policy issued to Ms. Vavasseur, evidencing a $100,000.00 limit of liability, because plaintiff's opposition memorandum was filed untimely, this Court cannot consider these exhibits.  Nonetheless, the fact that *State Farm* denied knowledge of any other policies in effect on the date of the incident, is insufficient to show that there were none.

*See Lozano*, 60 So.3d at 672. Accordingly, as this issue is dispositive of Shelter's motion, we pretermit discussion of whether a genuine issue of material fact exists regarding whether plaintiff's damages exceed the $100,000.00 payment she received in settlement with State Farm.

For the foregoing reasons, based on our *de novo* review of the record, we find the trial court did not err in granting Shelter's motion for summary judgment dismissing plaintiff's claims against it.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 9, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**23-CA-567**

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. LEE V. FAULKNER, JR. (DISTRICT JUDGE)
DAVID S. MOYER (APPELLANT)          TRAVIS J. BESLIN (APPELLEE)

### MAILED
CHARLES V. GIORDANO (APPELLEE)
ATTORNEY AT LAW
3501 NORTH CAUSEWAY BOULEVARD
SUITE 400
METAIRIE, LA 70002